Margaret McIntyre
Attorney at Law
195 Montague Street, 14ᵗʰ Floor
Brooklyn, New York 11201
Tel. (212) 227-9987
Fax (917) 809-6704
mem596@icloud.com
www.margaretmcintyrelaw.com

June 14, 2021

BY ECF

Hon. Sarah L. Cave, U.S.M.J.
United States District Court, Southern District of New York
500 Pearl Street, Room 1670
New York, New York 10007

        Re:    Christian v. Michelle Kars and John Kars
                  20 Civ. 10362 (SLC)

Dear Judge Cave:

      Along with TakeRoot Justice, I represent Angela Christian, Plaintiff in the above-referenced matter. We write to submit the parties' joint request that the Court approve the parties' settlement under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The parties' settlement agreement, and exhibits to this letter motion, are included with this letter motion. For all of the reasons that follow, the parties respectfully request that the Court grant the instant motion in its entirety on the grounds that the settlement in this FLSA action represents a reasonable compromise of a bona fide dispute and a fair distribution of the settlement proceeds.

**Procedural History and Background to the Settlement**

      This lawsuit was brought by Plaintiff Angela Christian ("Plaintiff") to recover overtime premium pay under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law, Art. 5 and Art. 6. *et seq.*, and the regulations related thereto ("NYLL"), as well as to redress failure on the part of Defendants Michelle Kars and John Kars ("Defendants") to issue Plaintiff with a wage notice and wage statements that complied with the NYLL §§ 195(1) and 195(3). Defendants have not yet filed an answer.

      Plaintiff has claimed overtime for the period from June 15, 2014, to in or about early June 2019, when she worked for Defendants as a domestic worker. Plaintiff was not exempt from the requirement that she be paid overtime for hours beyond forty worked each week. However, Plaintiff was paid a regular weekly salary even though she regularly worked an average of 53 hours per work week for Defendants. Plaintiff commenced employment at 7:45 a.m. each weekday, before Defendants left for work, and finished working after Defendants returned from work, at approximately 6:30 p.m.

Commencing in or about early June 2014, Plaintiff was paid a weekly salary of $650. In or about June 2015, Plaintiff's weekly pay was increased to $700 per week. In or about June 2016, Plaintiff's weekly pay was increased to $750 per week. In or about mid-February 2017, Plaintiff's weekly pay was increased to $900 per week. In or about early June 2019, Plaintiff's employment with Defendants ended.

There was no written agreement setting forth the terms of Plaintiff's employment with the Defendants. The parties dispute whether there was a verbal agreement regarding what Plaintiff was to be paid, and whether or not her pay was intended to include overtime pay. The parties further dispute what the overtime premium would be if the matter were tried to a jury, and thus what the total damages would be. Defendants also contend that they provided Plaintiff with wage statements in compliance with NYLL § 195(3).

The parties have evaluated their respective positions and the significant time and expense of continued litigation. All parties wish to avoid the considerable uncertainty and risks of litigation, as well as the expense and length of continued proceedings necessary to prosecute and defend this matter. The Settlement Agreement presented to the Court is the product of arms-length negotiations between experienced counsel, with significant assistance from a mediator in the Southern District of New York Mediation Program. A copy of the Settlement Agreement is annexed as Exhibit 1.

## The Settlement Agreement is Reasonable and Fair

The Settlement Agreement calls for Plaintiff to receive, in two payments, $45,000.00 and for plaintiff's counsel to receive $20,000.00 in total. The parties will tender mutual general releases to one another, as well as mutual promises not to disparage each other. The Settlement Agreement is narrowly drawn to recognize the parties' legitimate interests in resolving their conflict without impairing the public purposes of the FLSA.

Proposed settlements under the FLSA require court approval because private settlements under the FLSA will not effectuate a valid release. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). Federal courts routinely allow employees seeking to settle and release FLSA claims to do so pursuant to a judicially-supervised settlement.  *Le v. SITA Information Networking Computing USA, Inc.,* 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June. 12, 2008). When parties bring a proposed settlement of an FLSA claim before a court, the court must scrutinize the settlement to determine whether it is a fair and reasonable resolution of a bona fide dispute. *Lliguichuzhca v. Cinema 60, LLC,* 2013 U.S. Dist. LEXIS 79543 at *4 (S.D.N.Y. June 5, 2013).   Generally, there is a "strong presumption in favor of finding a settlement fair..." *Id*.

The FLSA places strict limits on an employee's ability to waive claims "for fear that employers would [otherwise] coerce employees into settlement and waiver." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Accordingly, an employee may not waive or otherwise settle an FLSA claim for unpaid wages for less than the full statutory damages unless the settlement is supervised by the Secretary of Labor or made pursuant to a judicially supervised stipulated settlement. *Id.*

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Id.* Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award. *Id.* Courts often award attorney's fees by the lodestar method, *i.e.*, a reasonable hourly fee multiplied by the hours reasonably expended. Courts often award attorney's fees as a percentage of the total fund in lieu of using the lodestar method. *Id.* In this case, counsel seeks approval of a negotiated fee that is slightly less than the lodestar amount or a standard contingency fee. [1]

The payment of $45,000 as damages to Plaintiff reflects a reasonable compromise in view of the possible recovery and both sides' risk of loss. Plaintiff calculated her pay losses at approximately $26,000, while the Defendants calculated that overtime wages owed, if Plaintiff prevailed, would total no more than approximately $22,000. Plaintiff considered that even using Defendants' calculation of unpaid overtime of $22,000, Plaintiff's total damages would amount to $57,500, including as follows: $22,000 unpaid overtime; $22,000 liquidated damages; interest of approximately $8,500; and penalties in the amount of $5,000 for a failure to provide Plaintiff with a hiring notice. In addition, Defendants face difficult financial circumstances exacerbated by the financial downturn resulting from the COVID-19 Pandemic, a situation which also "militates in favor of finding a settlement reasonable." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013); *see also Hart v. RCI Hosp. Holdings, Inc.*, No. 09 Civ. 3043 (PAE), 2015 WL 5577713, at *10 (S.D.N.Y. Sept. 22, 2015) (explaining that significant "risk that plaintiffs would not be able to collect, or fully collect, on a judgment" supported approval of the settlement agreement, which "[g]uarantee[d] recovery from the other two defendants in the event that [one] prove[d] unable to pay the entire settlement amount").

Based on this assessment, the amount of $45,000 to Plaintiff agreed upon means that Defendants will pay Plaintiff close to the full amount she could have expected to recover had the litigation proceeded to trial, but provides Plaintiff with her damages now rather than later. The settlement also enables both parties to save the time and expense of further litigation.

Approval of a settlement is warranted where it is the result of "contentious arm's-length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Reyes v. Buddha-Bar NYC,* 2009 U.S. Dist. LEXIS 27852, at *8 (S.D.N.Y. May 28, 2009).

Southern District courts scrutinize confidentiality and non-disparagement provisions in FLSA settlement agreements to ensure that they do not undermine the public purposes of the FLSA. *E.g.*, *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) (court must safeguard "public's independent interest in assuring that employees' wages are fair") (Kaplan, J.);   *Santos v. El Tepeyac Butcher Shop Inc.*, 2015 U.S. Dist. LEXIS 168186 at * 4

---

[1] A copy of Plaintiff's retainer agreement with counsel as well as both attorneys' time records are annexed hereto as Exhibit 2.

(confidentiality and non-disparagement provisions may not "thwart Congress's intent to ensure widespread compliance with" the statute) (S.D.N.Y. Dec. 15, 2015) (Abrams, J.). Paragraph 6 of the Settlement Agreement, pursuant to which the parties agree not to disparage each other, does not overreach. The provision expressly states, "Nothing in this Agreement shall be construed to keep the terms and conditions of this Agreement confidential."

Non-disparagement clauses in FLSA settlements are not per se objectionable. *Lopez*, 96 F. Supp. 3d at 180 n. 65. As Judge Kaplan noted, a settling plaintiff may contract away his right to say things that are "insulting or calumnious about the defendants." *Id.* A plaintiff may not lawfully contract away his right to make any negative statement in the absence of a carve-out for truthful statements about his experience litigating his case. *Id.* Paragraph 6 was crafted to comport with that limitation on permissible non-disparagement agreements, while satisfying the needs of the parties to bring finality to their dispute.

Similarly, Defendants sought a general release from Plaintiff to settle the case, citing their need for certainty that they would have no further litigation with Plaintiff. Plaintiff does not believe she has any other claims against Defendants and was willing to give the Defendants the assurance that she would not sue them for anything else, so long as the obligation was mutual. In this way, the parties found a reasonable compromise. Courts in the Southern District have found mutual general releases meet the reasonableness standard under Cheeks in these circumstances. In *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554 (S.D.N.Y. June 10, 2016), the Court held that since the case was not a class action, at least one of the dangers posed by an overbroad release – that it would bind class members who had no bargaining power concerning the settlement terms – was not present. *Id.* at *4. Additionally, the Court held that since the plaintiff was no longer an employee of the defendants, it reduced the danger that the release was obtained through improper job-related pressure. *Id.* As such, the Court held that under these circumstances, which are similarly present here, a mutual general release releasing both plaintiff and defendants from liability for any claims each might have against the other, up to the date the agreement, with the exception of personal injury or workers' compensation claims by plaintiff, made sense in order to bring closure to both sides. *Id.* The Court thus found such mutual release to be fair and reasonable. *Id.*; see also *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5-6 (S.D.N.Y. Nov. 6, 2015)

Plaintiff's attorneys' fees of $20,000 do not present any barrier to approval. They represent 30.76% of the settlement amount, slightly less than the one-third contingency fee set forth in the Plaintiff's retainer agreement. Courts "regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Pinzon v. Jony Food Corp.*, No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (quoting *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007 (VSB), 2015 U.S. Dist. LEXIS 166890, (S.D.N.Y. Dec. 14, 2015). *See also Ezpino v. CDL Underground Specialists, Inc.*, 2017 U.S. Dist. LEXIS 103012 (E.D.N.Y. June 30, 2017), report and recommendation adopted, 2017 U.S. Dist. LEXIS 110557 (E.D.N.Y. July 17, 2017) ("A one-third contingency fee is a commonly accepted fee in this Circuit.")

Moreover, the attorneys' fee is close to the lodestar amount that can be calculated in this case. Plaintiff was initially represented by Eliseo Cabrera, Esq., of TakeRoot Justice, which endeavored to resolve this matter prior to litigation. When that did not happen, Margaret McIntyre, Esq., was brought on to bring the matter to court as lead counsel, with TakeRoot Justice remaining as co-counsel.

  My regular hourly rate is $450. I was admitted to the bar of this Court in 1996. Since that date, I have practiced exclusively in the area of labor and employment law. My contemporaneous time records (annexed as part of Exhibit 2) show 32.4 hours expended on this matter between November 25, 2020, and May 11, 2021, the day the settlement was reached. Based on these hours, my lodestar calculation is $14,580, slightly less than the $15,000 fee I will receive under the Settlement Agreement. (My fee will also cover the $402 filing fee with the Court.)

  Mr. Cabrera's hourly rate is $225. He was admitted to the bar of this Court in 2019 and has since practiced primarily labor and employment law. His time records show 26 hours expended on this matter between November 7, 2019 and May 9, 2021, a period that was extended due to the Covid-19 pandemic. Based on these hours, Mr. Cabrera's lodestar calculation is $5,850, slightly more than the $5,000 fee TakeRoot Justice will receive under the Settlement Agreement.

  The hours expended by both counsels are neither wasteful nor duplicative and reflect a reasonable amount of time spent. The amounts do not reflect time spent since mediation (*i.e.*, negotiation of the final settlement agreement and preparation of this motion).

  For all of the foregoing reasons, the parties respectfully request that this Court grant their joint motion and approve the settlement of this action, including approval of the Plaintiff's release of claims under the FLSA, and "so order" the annexed Settlement Agreement, so that this action shall be dismissed with prejudice, subject to the condition that the matter may be reopened if the settlement payment is not made within 30 days of this Agreement.

            Sincerely,

            /s/

            Margaret McIntyre

            Eliseo Cabrera, Esq.
            TakeRoot Justice
            123 William Street, Floor 16
            New York, NY 10038
            (646) 923-8315

            *Attorneys for Plaintiff*

cc: Jaclyn G. Goldberg, Esq.
   Keane & Beane P.C.
   Attorneys for Defendants